Good morning. Miles Pope for Edmund Abordo and I will endeavor to reserve three minutes for rebuttal. My plan, unless the court has a different preference, is to briefly address the motion to withdraw the guilty plea issue and then focus on the procedural reasonableness of the sentence and the supervision conditions. Starting with a brief word on the motion to withdraw, the district court should have granted that motion under the liberal pre-sentence standard for withdrawing guilty pleas given the following three fundamental reasons. First, Mr. Abordo's consistent post-plea insistence, which began before the issuance of the draft PSR, and so before he even knew what guidelines range or sentencing range he was facing, that counsel committed a series of trial errors that undermined his confidence in their representation. Secondly, the confusion and reticence Mr. Abordo expressed both during the change of plea hearing and thereafter about the course of proceedings and what he was pleading guilty to. And finally, the fact that by the time Mr. Abordo had reiterated his request to withdraw his plea at sentencing, had sort of affirmatively stated, I want to withdraw my plea, it was clear that he hadn't gotten the full benefit of his bargain given that his counsel at sentencing had not objected to the PSR's loss amount calculation and neither had the government and the district court had denied those objections as untimely. So I acknowledge that Mr. Abordo's pro se filings were not a model of clarity, but under the liberal rules that govern that issue, he should have been allowed to withdraw his plea. Unless the court has questions about that issue, I'm going to turn to the sentencing. And turning to sentencing and the procedural reasonableness of the sentence itself, and I'll get to the supervision conditions thereafter. So ever since Carty, it has been clear that sentencing courts need to begin by correctly calculating the guidelines range. They need to keep that range in mind throughout the sentencing process, and they need to explain any variance from the guidelines in a manner that permits meaningful appellate review. The sentencing court here substantially and erroneously deviated from that process. Instead of beginning by accurately calculating the guidelines range, it essentially announced it was rejecting some objections as untimely by the government, but then it said that it was going to consider them as variance arguments. The government then focused its sentencing argument on those objections, specifically making the, you know, recast as variance arguments, the objections to the adjustments or the lack of adjustments that it argued for in its untimely briefing. And then after hearing that argument, the sentencing court settled on a sentence that was above the guidelines the court had calculated, but that would have been squarely within the guidelines that would have applied had the court applied the adjustments that the government was seeking, but also granted the acceptance of responsibility reduction that the government really didn't contest and that the PSR recommended. So let me just stop to get what's the baseline there, because when they have this whole colloquy about the government being untimely in its submission, and then he says, I can't recalculate the guideline range based on what's in the pre-sentence report. So is that the foundation? We have the pre-sentence report, we have a guideline calculation, correct? Correct, we do. So, yes, there's a pre-sentence report, it calculates the guidelines, and the composite range that the pre-sentence report gets to, which the court says it is essentially, it says it's adopting as its own technical findings, I agree with that. Okay, so far we're good. So far we're great, yeah, it's 30 to 36 months. Where we get bad is right after that, where the court says, okay, but I'm going to treat, you know, the court says this is a little awkward, there's an interchange of multiple district's practices, I'm going to treat these guidelines objections that I have that I have denied and therefore have accepted the 30 to 36 month range as variance arguments. And that's where the problem begins, because... All right, so now what would preclude the court from then saying, okay, I have a guideline range, we don't have an enhancement or a request from the government that I'm looking at now, but now I'm going to see, should I vary from the guideline range? So far, so good? Absolutely, there's no problem varying from the guidelines range, thankfully. And then, where does the court go wrong? The court goes wrong in announcing that it's going to consider specific guidelines objections as variance arguments. You need to begin with the guidelines and consider them, you know, keep them... Well, I thought your argument was that the court hadn't explained its variance in the way it had to, not that it considered anything. I thought it could consider whatever it wanted to, really, as an explanation. Go ahead, answer it. We got you this far, now where does the district court go wrong? What's your objection? With the explanation, you're absolutely right, and I think I've kind of inverted sort of some argumentation there. Agree, the court never explains, it never specifically says, here is why I'm varying upwards. The reason, though, the guidelines are relevant to that is because, you know, an upwards... You have to begin by calculating the guidelines range. An upwards variance can be justified by any number of 3553A considerations, but it cannot be justified by the conclusion that the guidelines range was affirmatively wrong. Not that you disagree with it, you can certainly disagree with the guidelines and have a Kimbrough sort of disagreement. So, is this a semantics issue? I guess, if the court... Part of the problem is the lack of explanation. But, let's say the court had said, are you drawing a distinction between the court saying, I'm varying upwards because these enhancements should have increased the guidelines range, but they were too late, versus, I'm considering the facts, the same facts that would justify these enhancements. They're not applied, but I still think these facts warrant a variance. Is there a substantive difference between those two explanations? There is, and there's a substantive and not a semantic difference, and this is why. There is a specific... It's rooted in the facts of this case. There is a specific objection that the government presses. It's the objection that the official victim adjustment should have applied. Government argues, you know, in its sentencing submission, this adjustment should have applied. The government now concedes correctly on appeal that that argument was wrong. If the court had... If that was what the court had in mind, and it said it was going to consider these specific objections and the possibility that these enhancements should apply as variance arguments, then it would have been a very different situation had the court first been ruling on the objection and then considering the facts. And the reason is because, you know, the court... This court has said in Carty, the court needs to give the guidelines respectful consideration. So, there's a meaningful chance and risk here that the court varied upwards thinking, yeah, you know what, really this official victim adjustment applies, but without realizing that actually, no, the official victim adjustment doesn't apply and I need to vary upwards either through a Kimbrough disagreement that the official victim adjustment should apply in this circumstance, very different analytical framework, or simply under the 3553A factors, but fully embracing that the official victim adjustment does not apply and that the guidelines are what they are, you know, are what they are or are what they should be. But your main argument is just that the problem is we can't tell. Correct. Correct. Yes, and to go back to that question, because that is me muddying the waters with that early comment that caused your intervention. Yes, my argument is the court failed to adequately explain its sentence because it did not say I am varying upwards for this reason. And just to anticipate what the government might say. So, if the government gets up next and says, okay, fine, that's true, the court should have explained, but this is harmless error because it's very clear that the court thought that this sentence needed to be higher because of all the things that it said about why this was so serious, what would be your response? My response is twofold. The first point is what I was saying earlier about how there's a real problem in the specific record of this case because, you know, the official, again, with the court having said I'm considering these objections as variance arguments, there's a good chance it thought the official victim enhancement applied. I'm not, I recognize that like We don't know. You don't know, but there's a good chance. And on the third prong, I need that, that's what I need. So I'm not going to go so far as to say that's what the court said, but I don't need to. All I need to show is that on this record, that could have happened and there's a real chance that it could have happened. But the second point is, you know, what I argued in my briefing, that the failure to explain in and of itself, and I know, you know, I cite the Second Circuit and D.C. Circuit cases. I would urge this court to follow that approach. I think it makes good sense. That affects substantial rights because it deprives my client of meaningful appellate review, which is a substantial right my client has. So you're saying a plain error review? We're definitely, I concede we're on plain error review. All right. But I'm saying on the third prong of plain error review, I would urge the court to hold that there are basically two routes to my victory. The first one is the official victim adjustment, the stuff about the official victim adjustment, but the second one is that by failing to explain that, the upward variance, the court has disabled my client from meaningful appellate review and on prong three, that affects my client. So basically you want to remand for resentencing? I do. That would be great. And can we talk about the conditions as well, sex offender? Yes. We can talk. Yes, we can. So I will talk about first the sex offender conditions and then if I've got time, I'll talk about the employment condition. With respect to the sex offender. Sorry, can I just ask a threshold question, though? If we're remanding, if you win on the first issue and we're remanding for resentencing, do we need to reach these? No, I think it would be, well, it would potentially be helpful to reach, you know, to provide some guidance, especially with the employment condition, because there is this standing order in the District of Hawaii about what that employment condition should be. So to the extent this court agrees that it's unconstitutionally vague, that might be helpful. But the answer to your question is no, you do not. And, you know, it would be fully, it would be a full resentencing, we would fully And then you'll be back here for those two points, right? Of course, especially if it's Hawaii. You might have to wait a while on that one. Can we start with the employment one with the word substantial? Because if I'm understanding your argument, it doesn't seem like you would object to this if the word substantial wasn't there, and yet it would seem like the word substantial helps your client. I understand that question and I disagree. It is just affirmatively and fundamentally confusing. If it does anything, it narrows the circumstances in which your client could violate the condition, right? It either does nothing or it narrows the range of possible violations. Well, but it also creates a lack of clarity for my client in terms of when he has to report. And so while I agree with you, it either does nothing or narrows. It also, though, and this is candidly just from my perspective as a defense lawyer, why I object to it, notwithstanding your point, it just is going to be confusing. It's going to create a situation where, you know, probation officers who have different perspectives on what counts as substantial changes versus clients who have different perspectives on what counts as substantial changes are going to get crosswise. If you think it would be okay for him just to have to report every employment change, then I just am really having trouble with why it would be a problem to add the word substantial. Well, because that leaves a zone where it's unclear whether he has to report it or not. Yeah, I guess so, but why doesn't he just report every change then, which you think is okay to make him do? Well, under the, so, because, well, I mean, if I'm putting myself in the shoes of someone who's on supervised release and I'm trying to, you know, I'm trying to basically comply with that directive, I'm in a situation where I might sit there and I might say, well, look, it says substantial, and so I'm not going to report this attempting to comply in good faith with the condition, and, you know, at that point you get sort of trapped into a situation where you might get violated. So the mere existence of that term in the employment condition creates a risk of miscommunication between supervisee and probation, and thereby increases the risks of violation proceedings being initiated against my client. So if the result of your argument is that every employment change needs to be reported, what would be your argument on that? Well, at that point, I think, I think that's getting, the precise contours of the employment condition that ought to be applied are ultimately a matter for the district court. No, I understand, but if we take the word substantial out and say you cannot use the word substantial, and we have, you know, in other terms of supervisory conditions, modified in effect what can be said, so now if the district of Hawaii says, okay, every single employment change must be reported, any objection to that? Yes, that's kind of a yes or no question, and then you might have an answer of why, but. Can I punt? Because, I'll tell you what, I know I can't. No, you can't. So why don't you, you just answered that question. My, I think my position on that is there is no vagueness objection to that. Okay. And I thought, yeah, I thought you conceded that that would be a fine. Right, there's no, and the reason I said can I punt is because there are other possible arguments depending on the specifics of the case that I don't want to necessarily concede. I mean, it doesn't necessarily solve defendant's problem, right, because they would still have a situation where, I don't know, a change could be so minor that they're questioning in their mind, do I really have to report this, right? I mean, so, I mean, in some ways I do agree with Judge Freeland that the substantiality requirement at least gives the defendant an out to say, well, this change seemed minor to me, right, and then there would have to be a good faith application of the condition. Understood, and again, I think I would just rest on my prior answer, but I take the court's point. Okay. And I will reserve what time I can for rebuttal. May it please the court, Daniel Zip on behalf of the United States. Taking up the last issue on the supervised release condition, all of the defendant's sentencing arguments are subject to plain error review. He has not shown that the employment condition in this case was so vague that men of ordinary intelligence would have to simply guess at what the meaning of substantial change is. In fact, if you look at what's in the guidelines now that he says this was altered from, they provide that if the defendant plans to change where the defendant works or anything about his or her work, which is just as arguably ambiguous as this word substantial is. If anything, it's open to more interpretation. Can you address, because we didn't get to it on the first argument, that the application of the sex offense related conditions in those doesn't seem like there is a recent justification for those. Sure. Well, the first point is, again, this is subject to plain error review. And I think whether this is appropriate depends on how closely it aligns with several cases that this court has decided. TM, Johnson, and Hoag being the most important ones. And each of those had specific facts, some of which weighed against the condition, some of which weighed in favor of it. And this case shares at least some of the attributes with Hoag and with Johnson, the ones that upheld it. Specifically, although the actual conviction in this case was 20 years old, or more than 20 years old. More than 30, right? More than 30 years old, I think. He spent, what I meant to say was, he spent 20 years in custody on the offense. He had just been released from custody on that offense four years before he committed this offense. And in the years leading up to his release from custody in 2013, 11 times he refused to engage in sex offender treatment. This offense didn't have to do with sex offending though, right? This offense? The offense that was the conviction that led to this sentencing?  But that's the same in Hoag was a gun case, and TM was a marijuana case. That's sort of the typical in these type of cases is whether it's... But those cases say an offense this old can't count. So I guess when you started to talk about how long he'd been out or something, I thought you were going to say, and now he's sex offending again, or something relevant. But I still don't understand how this more than 30-year-old offense is relevant under our cases that talk about it being too old. Well, again, I think there's a fact that although it was 30 years ago, we have the fact that he spent a significant amount of time in custody and leading up to the time when he was released relatively shortly before he committed this offense, he refused to engage in sex offender treatment. And what this court has recognized in Johnson is that a sort of lack of information about whether the defendant is in fact a sex offender or needs treatment is one factor that weighs in favor of imposing it. Did the district court explain any of that as the reason for imposing the conditions? They did not, no. Although at the end, he specifically asked defense counsel, do you have any objections to these supervised release conditions? Defense counsel said no. So we're squarely in plain error. And then the third factor that weighs in favor of it in this case is that the language of the condition says sex offender assessment and, if necessary, treatment. And again, this is a factor that this court has recognized. Makes this less aggravated than the condition in TM, which mandated sort of highly intrusive sex offender treatment. Here, if the defendant agrees and goes to the assessment and is determined that he's not attracted to children and doesn't need treatment, then that's the end of the day and there's no real violation of any rights on his part. And if he fails the assessment, then sort of by extension, it's not an abuse of discretion to order someone who's failed the assessment to undergo treatment. And then the final point, all of these cases sort of turn on individual facts and individual factors. On plain error review, the fact that some way against it and some way for it sort of forecloses the idea that this was something so plain that the court should have recognized it without objection. What is your site for that proposition? I think Reeves was, I don't know the case offhand, but it's a common application of plain error is that when there's facts in dispute, it can't be plain absent an objection from defense counsel. Facts in dispute, yes. But you're saying where factors cut both ways, that can't be? Right. If there's not a clear case on point, then it can't be plain. If there's not a controlling authority, in this case, there's three cases with different facts that came out in different ways, some of which are shared by this case, that fundamentally can't be plain error absent one of those controlling the facts of this. You're saying in a multi-factor issue, there can't be plain error categorically? Or you're just saying there needs to be a closer match? There has to be controlling authority on point. And there's not in this case based on the facts here. There's multiple cases coming out in different ways. So can we turn back to the first issue in terms of the sentencing explanation? And you heard the whole colloquy here, and where I think we left it with Mr. Pope was saying, we don't know, and so there should be a remand so we can find out if the court was under some mistaken belief with respect to the enhancements, or if it was exercising sort of free-floating discretion. What is the government's response with respect to a requested remand? We don't believe remand is necessary here for a number of reasons. First, again, it's on plain error review. The defendant never objected to the adequacy of this explanation by the court. And the case law is clear that this court reviews only for plain error. There's nothing in what the court said that suggests that it was operating under a mistaken idea of what the guidelines were. In fact, it set out the guidelines correctly at the outset, and then it engaged in a 3553 analysis and arrived at the sentence it did. That is sufficient explanation under this court's case law. There's no additional requirement that the court sort of use magic words and say that 3553 are equal to X number of months above the guidelines. Simply correctly calculating the guidelines, engaging in a lengthy, detailed analysis of 3553 factors and imposing sentence is sufficient explanation. And it's certainly not plainly insufficient. The court should have said more. I would also note that... And you don't think that Chavez-Meza tells us that you have to explain why you're departing from the range? I mean, it sounds like you're saying all you have to do is sort of give a reason for the sentence, but I read it as more you have to recognize you're departing from the range and explain why. And I don't know that that happened here, but if you can explain where that happened, I'd like it. No. The court never specifically said, I am upwardly departing, but it's sort of, I don't want to say implied, but it's part of the sentencing process that the court calculates the guidelines and then spends several pages of transcript explaining all of the aggregating factors, and then implies a sentence slightly above the guidelines it calculated. It doesn't also need to say the magic words and all those 3553 aggregating factors are the reasons why I went above the guidelines. That's sort of how the sentencing process worked. Isn't there some confusion here, though, because of this official enhancement that you acknowledge would have been improper and the fact that it was in the mix of the conversation? No, Your Honor. And I think if you look at what the government argued in its papers, we included the official victim and the vulnerable victim as part of our 3553 analysis. It wasn't just the guidelines. These are squarely in the heartland of 3553 reasons why a more significant sentence would be appropriate. The court explicitly said, I'm not applying those to the guidelines, and then used them as part of its 3553 analysis, just as the government had recommended. So there's nothing throughout that process that suggests that the court was somehow secretly applying the wrong guidelines. And certainly on plain error, this court should not sort of assume something that's not plain from the record. And then I think, as you anticipated, my argument to defense counsel would be, ultimately, on the third prong, this wouldn't have made a difference. Ultimately, the argument boils down to this. If the court had been asked at the end, please explain why you went above the guidelines, he would have simply repeated the 3553 factors that he had just gone over. And then having just heard from the chief judge, having just heard from the victim, and explained why that vulnerable victim and the sort of chief judge rule of law concerns would result in an above-guideline sentence, the outcome would have been the same. And, I mean, we might think that that's likely, but can we be sure of that, given that the government was arguing there's also an enhancement for official victim that should apply here as well? Yes, I think we can, only because the court specifically said, I'm not applying that. And there's never any suggestion at any point throughout the rest of the hearing. We never argued it. No, but the court did say you could argue for a variance based on those exact same objections. So the record is muddy. Yes. I'm happy to address. There's a couple other issues. I guess the court has questions. Or I can sit down. It's your argument. All right, I guess briefly on the plea withdrawal, the district court was well within its discretion in denying the defense request to withdraw the plea. Even giving his pro se filings sort of the benefit of the doubt and saying that he was arguing that he was dissatisfied with counsel, that he sort of had a breakdown in communications, the fact remains that during the Rule 11 colloquy, the defendant was specifically asked, are you satisfied with the representation of your attorneys? And he said yes. That more or less forecloses the idea that that was a basis for withdrawal. It's also not entirely clear that that was his basis. Much of his pro se filings seem to be focused on the smoking gun and the idea that he was upset that he didn't get a better deal. And that, too, is foreclosed as a reason for withdrawal. So the district court properly denied it. Specifically, when you look at this case, this is not one where a defendant sort of pleads guilty and then changes his mind before much has happened in the case. This is a defendant who had already gone to trial. The United States had flown a victim out who'd spent much of the day on the stand, had the elderly victim in the hall ready to go, had done opening statements. To say that it's fair and just at this point to withdraw the plea and sort of go through that whole process again requires some significant showing on the part of the defendant that these limited pro se filings just don't meet. Happy to address any other questions. I don't think we have any. Thank you. Let's put two minutes on the clock for rebuttal, please. Thank you, Your Honor. To begin with the sentencing point, it is clear that it is error not to explain a deviation from the guidelines. So we are in clear error land. The question then turns to the third prong, which is basically was the client prejudiced on this record? And I think, again, happy to go into detail, but just given the specifics of how the court approached the guidelines issue and how the government argued for it, I would just emphasize what was already observed, which is that the government did go on in its sentencing argument to say the official victim enhancement should have applied and it now agrees it should not have applied. And so that gets us under prong three once we've gotten through the initial hurdle of the failure to explain to this sentence should be reversed. Turning to the sex offense conditions, I would just emphasize one point. Not only did the court not give any explanation whatsoever for why it chose to impose those sex offender conditions, it affirmatively said in its sentencing comments, you know, I'm aware that there are some old sex offenses. That's how it characterized it. But I don't see how this is now I'm now paraphrasing. Essentially, I don't see how this bears on the sentence that's being imposed here. So the court itself said that those sex offenses were irrelevant. And under the circumstances, given how old they were and given that explanation, given that the court provided, I would submit that it is plain error to subject my client to these extraordinarily onerous conditions of supervised release. Unless the court has... What is your response to the argument that the cases are distinguishable in some way that makes this not a clear enough error for plain error? So first, two points. The first is, as a general framework matter, this court, particularly and specifically in the supervised release context, has said that we don't need precise appellate law on point. It is enough to have clearly established principles that guide the court's analysis of supervised release. That's in Joseph, which I cited. And the second point I would make is that, in my view, the cases that I've cited and the argument I've laid out is directly on point to this issue, where you have somebody who has 30-year-old sex offenses and absolutely no evidence whatsoever that the government has pointed to of any sexual reoffending throughout the time from when the offenses became final through four years and pre-trial and pre-sentence release where a court has concluded... You know, it's not exactly a clean record, or at least it's not a pristine period, as the government points out, because client's in prison, then gets out at some point and refuses sex offender treatment. So I think that there are some factual issues there that could bear on this. He was denied parole, and there appears to be an indication in the PSR that at least part of that had something to do with failure to participate in in-custody sex offender treatment. But I agree. But we nonetheless have, from this... But we don't have any allegation of any kind of sexual offending, but either in custody or when he gets out. And we have a court on, you know, when he's on both pre-trial and then pre-sentence release where you can only release somebody if they've established by clear and convincing evidence that they pose neither a community threat or a danger of flight. You have a judge essentially finding this person does not pose, by clear and convincing evidence, a risk to the community if he is released under pre-trial conditions that do not include sex offender treatment conditions. On the sex offense conditions, are you relying on substantive error or procedural error for the plain error or both? Both. Thank you. We're taking over your time. Thank you, both sides, for the helpful arguments. This case is submitted.
judges: McKEOWN, FRIEDLAND, SUNG